USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/8/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RICARDO ALFREDO PEREZ FLORES,    :
             :       21-CV-8109 (RWL)
        Plaintiff,    :
             :
    - against -        :      **DECISION AND ORDER:**
             :      **<u>SOCIAL SECURITY APPEAL</u>**
             :
COMMISSIONER OF SOCIAL SECURITY,  :
             :
        Defendant.    :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Ricardo Alfredo Perez Flores ("Flores"), represented by counsel, commenced the instant action against Defendant Commissioner (the "Commissioner") of the Social Security Administration (the "Administration"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Flores is not entitled to disability insurance benefits ("DIB") and supplemental social security income ("SSI"). Flores has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, asking the Court to vacate the administrative decision and reverse or remand the case for a new hearing and decision. The Commissioner has cross-moved for judgment on the pleadings, asking the Court to affirm the Commissioner's decision. For the reasons explained below, the Court DENIES Flores's motion and GRANTS the Commissioner's motion.

## PROCEDURAL HISTORY

In April 2015, Flores filed applications for DIB and supplemental SSI for a period of disability beginning July 1, 2010.  (R. 374-83.[1])  The claims were denied in 2015 (R. 234-35), and Flores requested a hearing before an Administrative Law Judge ("ALJ").  (R. 278-79.)  Flores appeared for a video hearing on August 24, 2017 and testified before ALJ Ben Willner.  (R. 203-33.)  At the hearing, Flores amended his alleged onset date to October 1, 2013.  (R. 223-24.)

On September 13, 2017, ALJ Willner issued a partially favorable decision finding that Flores had severe impairments consisting of a right-hand injury and obesity; the ALJ determined that Flores was disabled as of January 13, 2017, when Flores turned 55, but not before then.  (R. 9-33.)  Flores requested review by the Appeals Council.  (R. 360-63.)  Upon the Appeals Council's denial of review on February 25, 2019, the ALJ's decision became final.  (R. 1-8.)  Flores then commenced a civil action in this Court challenging the portion of the decision denying benefits for the period prior to January 13, 2017.  By stipulation and order dated July 3, 2020, the Court remanded Flores's case to the Commissioner for further proceedings.  (R. 661-63.)  In turn, the Appeals Council remanded the case to an ALJ with instructions to take any further action needed to complete the record and issue a new decision on the issue of disability prior to January 13, 2017.  (R. 664-71.)

On March 17, 2021, Flores, represented by counsel, appeared by telephone for a hearing before ALJ Zachary Weiss.  (R. 643-60.)  In addition to Flores, testimony was

---

[1] "R." refers to the certified administrative record (Dkt. 11).

provided by a consultative medical expert, Dr. Ronald Kendrick, and vocational expert ("VE") Dr. Amy Vercillo.  On June 1, 2021, ALJ Weiss issued a decision finding additional severe impairments, namely degenerative disc disease and knee osteoarthritis, but again finding that Flores was disabled as of, but not before, January 13, 2017.[2]  (R. 596-633.) Flores then filed the instant action on September 30, 2021.  (Dkt. 1.)  On November 24, 2021, the parties consented to my jurisdiction for all purposes.  (Dkt. 9.)  Flores filed his motion for judgment on the pleadings on July 22, 2022.  (Dkt. 23.)  The Commissioner cross-moved on September 20, 2022.  (Dkt. 26.)  Flores did not file a reply, electing to stand on the present record.  (Dkt. 28.)

## APPLICABLE LAW

### A.   Standard Of Review

A United States District Court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner.   42 U.S.C. § 405(g); *Skrodzki v. Commissioner of Social Security Administration*, 693 F. App'x 29, 29 (2d Cir. 2017) (summary order).  The inquiry is "whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *accord Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012).

"'Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.'"  *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for noncompliance with regulations)).  Courts review de novo

---

[2] The hearing previously started on December 29, 2020 but was adjourned for further development of the medical record.  (R. 634-42.)

whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where the court could not "ascertain whether [the ALJ] applied the correct legal principles … in assessing [plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the Social Security Act"); *Thomas v. Astrue*, 674 F.Supp.2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must "'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'"  *Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)); *see also Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (reaffirming same standard).   "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would ***have to conclude otherwise***."  *Brault*, 683 F.3d at 448 (internal quotation marks omitted) (emphasis in original); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."  42 U.S.C. § 423(d)(5)(B).  The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."  42 U.S.C. § 405(b)(1).  While the ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "'reconcile explicitly every conflicting shred of medical testimony,'" *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.  *See Ericksson v. Commissioner of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-CV-1120, 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).  The court must afford the Commissioner's determination considerable deference and "'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'"  *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984)); *Dunston v. Colvin*, No. 14-CV-3859, 2015 WL 54169, at *4 (S.D.N.Y. Jan. 5, 2015) (same) (quoting *Jones v. Sullivan*, 949 F.2d at 59), *R. & R. adopted*, 2015 WL 1514837 (S.D.N.Y. April 2, 2015).  Accordingly, if a court finds that there is substantial evidence supporting the

Commissioner's decision, the court must uphold the decision, even if there is also substantial evidence for the claimant's position. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error." *Dunston*, 2015 WL 54169, at *4 (internal quotation marks omitted) (citing, *inter alia*, *Douglass*, 496 F. App'x at 156; *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)).

## B.     Legal Principles Applicable To Disability Determinations

Under the Act, a person meeting certain requirements and considered to have a disability is entitled to disability benefits. 42 U.S.C. § 423(a)(1). The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is disabled and therefore entitled to benefits, the Commissioner conducts a five-step sequential analysis. 20 C.F.R. § 404.1520(4).[3]

---

[3] As noted at the outset, this case involves both DIB and SSI benefits. For present purposes, the regulatory standards for DIB determinations and SSI provisions are essentially the same. *Canter v. Saul*, No. 3:19-CV-00157, 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020) ("The regulations for disability and disability insurance and supplemental security income benefits are virtually identical. The DIB regulations are found at 20 C.F.R. § 404.900, *et seq*., while the parallel SSI regulations are found at 20 C.F.R. § 416.901, *et seq*.") For simplicity, in the absence of a material difference, the Court cites to only the DIB regulations.

First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), (b).  If so, the claimant is not eligible for benefits and the inquiry ceases.

If the claimant is not engaged in any such activity, the Commissioner proceeds to the second step and must determine whether the claimant has a severe impairment, which is an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), (c).  If the claimant does not have an impairment or combination of impairments that are severe, the claimant is not entitled to benefits and the inquiry ends.

If the claimant has a severe impairment or combination of impairments, the Commissioner continues to step three and must determine whether the impairment or combinations of impairments is, or medically equals, one of the impairments included in the "Listings" of the regulations contained at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant's impairment or impairments meet or medically equal one of the Listings, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

If the claimant does not meet the criteria for being presumed disabled, the Commissioner continues to step four and must assess the claimant's residual functional capacity ("RFC"), which is the claimant's ability to perform physical and mental work activities on a sustained basis despite his impairments.   The Commissioner then determines whether the claimant possesses the RFC to perform the claimant's past work.  20 C.F.R. §§ 404.1520(a)(4)(iv), (f), (h).  If so, the claimant is not eligible for benefits and the inquiry stops.

If the claimant is not capable of performing prior work, the Commissioner must continue to step five and determine whether the claimant is capable of performing other available work.  20 C.F.R. §§ 404.1520(a)(4)(v), (g), (h).  If the claimant, as limited by his RFC, can perform other available work, the claimant is not entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4)(iv), (v).  The claimant bears the burden of proof for the first four steps. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).  Once the claimant has established that he is unable to perform his past work, however, the Commissioner bears the burden of showing at the fifth step that "there is other gainful work in the national economy which the claimant could perform."  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (internal quotation marks omitted).

## BACKGROUND

This background section is not intended to be comprehensive by any measure. Rather, it sets forth facts that the Court deems most helpful in understanding the nature of the case and informing the ensuing discussion.  As Flores states in his brief:  "[a]lthough the vast majority of medical treatment in this matter involves [Flores's] right-hand impairment, the [instant issues] involve errors which are relatively unrelated to that impairment."  (Plaintiff's Memorandum Of Law, Dkt. 24 at 4 ("Pl. Mem.").)

### A.    Flores' Medical History

Flores was born on January 14, 1962 and went to school up until, but without completing, twelfth grade.  (R. 210, 213.)  He previously worked as a general maintenance worker and plasterer but stopped working in 2010 after injuring his dominant right hand. (R. 214-15, 480.)  He developed an abscess, which eventually required surgery and led

to mild to moderate difficulties over the years in using his right hand.  (*E.g.*, R. 480, 549-550, 1135-36, 1977-78.)

In addition to his right hand injury, Flores experienced pain in his lower back due to degenerative disc disease.  In May 2015, Flores went to a hospital emergency department, reporting pain in his right hand as well as lower back pain that had been occurring for four months.  (R. 520-23.)  Flores denied radiating back pain, lower extremity weakness, numbness, or tingling.  (R. 521.)  A physician's assistant prescribed Motrin, and Flores was released the same day with no work restrictions.  (R. 523.)

On December 1, 2016, a nurse practitioner ("NP"), Jihyun Jo , assessed Flores as having low back pain, radiating to his legs.  (R. 981-82.)  On January 5, 2017, Flores returned to NP Jo, who again assessed low back pain radiating to his legs.  (R. 989.)

On January 11, 2017, Flores saw Dr. Naglaa Hussein to whom Flores reported having low back pain for five years, accompanied by a pain level of 6-7 out of 10 but with no numbness.  (R. 992.)  Flores also complained of falling multiple times while walking and having frequent muscle spasms causing him to lose his balance.  (*Id.*)  In treatment notes, Dr. Hussein noted that an MRI of Flores's lumbar spine revealed evidence of multiple disc bulges with both congenital canal stenosis and acquired stenosis as well as disc herniation impinging upon a nerve root.  (*Id.*)  Findings on examination showed mixed results.  For instance, Flores had limited range of extension in regard to the lumbar spine, evidence of trigger points, and difficulty heel walking.  (R. 992-93.)  At the same time, Flores had full muscle strength in his lower extremities, no joint tenderness, full/active range of motion in all major joints, intact sensation in the lower extremities, and did not use any mobility aids.  (*Id.*)  Dr. Hussein referred Flores to physical therapy for treatment

of his low back pain and indicated a plan for a trigger point injection and brace to begin in February 2017.  (R. 993.)

On February 13, 2017, Dr. Hussein assessed Flores with radiculopathy related to the lumbar back area.  (R. 1007.)  Treatment plan notes indicate that Flores was measured for a back brace and was to continue physical therapy.  (*Id.*)  On March 17, 2017, however, electrodiagnostic testing revealed no evidence of lumbosacral radiculopathy.  (R. 1013.)  In treatment notes of visits later in 2017, Flores was assessed as having sprained ligaments of the lumbar spine and indicated a treatment plan consisting variously of hot packs, electrical stimulation, and physical therapy.  (*E.g.*, R. 1046, 1050.)

**B.    Opinion Evidence**

The record includes medical source opinions from a variety of doctors, both treating and consultative.  Among others, Dr. Peter Graham, serving in a consulting capacity, examined Flores on July 10, 2015.  Dr. Graham confirmed Flores' history of right-hand pain.  (R. 586.)  Flores also reported having a history of low back pain for three years.  (*Id.*)  Flores described his back pain as intermittent, usually brought on by lifting or bending.  (*Id.*)  Flores rated his back pain about six out of ten but said that pain medication helps somewhat.  (*Id.*)  He had no associated radiculopathy, weakness, paresthesia, or numbness in the lower extremities.  (*Id.*)

On examination, Flores appeared in no acute distress, had a normal gait, could walk on heels and toes without difficulty, could fully squat, stood normally, used no assistive devices, needed no help changing for the exam or getting on or off the exam table, and was able to rise from a chair without difficulty.  (R. 587.)  Flores's cervical spine

showed full flexion and extension.  (R. 588.)  Flores experienced some pain on flexion and extension of the lumbar spine but he had full range of motion.  (*Id*.)  A straight leg test was negative, and Flores demonstrate full range of motion in his shoulders, elbows, forearms, and wrists.  (*Id*.)  Flores' right hand, however was somewhat pale and cold to the touch, with evidence of slight hyperesthesia.  (*Id*.)  No muscle atrophy was evident, and hand and finger dexterity were intact, as was Flores's grip strength.  (*Id*.)

Dr. Graham diagnosed Flores with right-hand pain and lower back pain.  He assessed that Flores had no limitation in sitting, standing, walking, or lifting, but had mild limitation of his right hand due to pain and hyperesthesia.  (R. 588-89.)  The ALJ gave "some weight" to Dr. Graham's opinion, commenting that it was well documented and consistent with findings and opinions of other independent medical experts who evaluated Flores.  (R. 615.)

Independent medical expert Dr Kendrick reviewed Flores's medical history and testified at the 2021 hearing.  Dr. Kendrick testified that Flores's medically determinable impairments were comprised of a right-hand impairment secondary to a blister and surgery with a scar, dystrophy of the right hand, bilateral carpal tunnel syndrome, arthritis of the right knee, acid reflux, and low back pain.  (R. 648.)

During Dr. Kendrick's testimony, the ALJ asked whether there was evidence in the record of low back pain.  Flores's attorney referred to the MRI mentioned in one of Dr. Hussein's treatment notes (dated April 19, 2017), at which point Dr. Kendrick said, "I missed that somehow."  (R. 648-49.)  But then taking the MRI into account, Dr. Kendrick testified that the evidence shows that Flores has degenerative disc disease.  (R.  649.)  Dr. Kendrick stated that he did not see "very many records of treatment of [Flores's] back."

(R. 648.)  He then commented that "many people have [degenerative disc disease] as part of the aging process" but that "it doesn't mean much unless they're being treated for it." (R. 649.)  Dr. Kendrick acknowledged that Flores experienced some episodes of pain, but that there was at least one episode where Flores clearly exaggerated his pain, reporting it as a ten out of ten even though the doctor who examined Flores found that he was not in acute distress.  (R. 649-50.)

Dr. Kendrick opined that, based on his review of the record, Flores did not meet any Listing before 2017.  (R. 650.)  Dr. Kendrick further opined that Flores was able to perform work at the light exertional level but that Flores could use his right hand only about 50% of the time, which falls in the "frequent" category.[4]  (R. 650.)  The ALJ gave "significant weight" to Dr. Kendrick's assessment.  (R. 610.)

Dr. Graham and Dr. Kendrick's opinions are the only two opinions discussed by the parties.  Accordingly, the Court does not address the other medical opinions of record.

## C.    Vocational Expert Testimony

At the 2021 hearing, the ALJ posed several hypotheticals to the VE.  Assuming an individual of the same age and education as Flores who could perform light work but could only use his right dominant hand 50% of the day, the VE identified jobs available in the national economy.   (R. 654-56.)   The ALJ then asked other hypothetical questions including RFCs that were not ultimately adopted by the ALJ in his RFC assessment. Finally, the ALJ asked the VE to assume the hypothetical person could only occasionally

---

[4] The transcript indicates Dr. Kendrick first stating that Flores could use his "hands" (plural) 50% of the day or less.  (R. 650.)  But Dr. Kendrick then clarified that Flores had nothing wrong with his left hand, that Flores would leave his right hand at rest when not using it, instead "using his left hand to do all the work" continuously.  (R. 651.)

reach, handle, finger, and feel; in response, the VE identified available jobs at the light exertional level consisting of conveyor line inspector, laminating machine tender, and filling machine tender.  (R. 657-58.)

**D.    The ALJ's Decision**

ALJ Weiss issued his decision on June 1, 2021, employing the requisite five-step analysis.  (R. 603-22.)  The ALJ found that Flores had not engaged in substantial gainful activity since the amended alleged onset date of October 1, 2013.  (R. 606.)  At step two, the ALJ determined that Flores had four severe impairments:  degenerative disc disease diagnosed in late 2016, osteoarthritis of the knee, a history of surgery for abscess in the right hand, and obesity.  (*Id*.)

At step three, the ALJ found that Flores's impairments did not meet or equal any of the Listings.  As the ALJ summarily explained, "[t]he record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment."  (*Id*.)  The ALJ specifically referenced, and set forth the requirements for, Listings 1.15 (disorders of the skeletal spine resulting in compromise of the nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina, which is the collection of nerves at the end of the spinal cord), and 1.18 (abnormality of a major joint in any extremity).[5]  (R. 606-08.)

---

[5]  Listing 1.15 , 1.16, and 1.18 replaced earlier similar listings.  The revised Listings were effective as of April 2, 2021.  Revised Medical Criteria For Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164 (Dec. 3, 2020).  The effective date falls between Flores's 2021 hearing and the ALJ's decision.  The ALJ based his decision on the revised Listings, and both parties present their arguments based on the revised Listings.  Accordingly, the

Next, for the relevant period, the ALJ found that Flores had the RFC to perform light work, except being limited to no more than occasionally handling, fingering, and feeling.  (R. 608.)  He also should not climb ropes or ladders.  (*Id*.)  At step four, the ALJ concluded that Flores has been unable to perform any past relevant work since the amended onset date.  (R 619.)  Finally, the ALJ found, based on the VE's testimony, that there were jobs that existed in significant numbers in the national economy that Flores could perform such as conveyer line inspector, laminating machine tender, and filling machine tender.  (R. 620-21.)  The ALJ thus found Flores not disabled for the period prior to January 13, 2017.  (R. 621.)

## DISCUSSION

Flores does not contest the ALJ's determinations at steps one, two, or four of the sequential analysis; nor does he challenge the ALJ's determination of his RFC.   Still, Flores contends that the ALJ's decision should be reversed or, alternatively, remanded for a third hearing, because the determination that Flores was not disabled prior to January 13, 2017 was not supported by substantial evidence.   In particular, Flores advances three arguments: first, at step three of the sequential analysis, the ALJ erred by failing to consider whether Flores's impairments medically equaled a Listing; second, at step five, the ALJ erred by failing to sufficiently ask the VE whether her testimony about available jobs was consistent with the Dictionary of Occupational Titles ("DOT"); and third, the ALJ erred by failing to include as an exhibit a post-hearing letter submitted by Flores

---

Court does the same.  The Court does not, however, make any determination whether the revised Listings retroactively apply to cases in which hearings were completed before, but decisions were issued after, the effective date.

concerning the alleged onset date of his disability.  None of those arguments stand up to scrutiny.

## I.     The ALJ Properly Found That Flores's Impairments Did Not Meet Or Equal A Listing Prior To January 13, 2017

Flores asserts that the ALJ erred by concluding that Flores's lower back condition did not equal the requirements of any Listing.  Flores focuses particularly on Listing 1.15, which applies to disorders of the skeletal spine resulting in compromise of a nerve root. According to Flores, remand is required both because the ALJ did not at all analyze whether Flores's back impairment medically equaled the Listing and because he relied on inadequate medical testimony by Dr. Kendrick.  The Court disagrees.  Substantial evidence in the record supports the ALJ's determination that Flores's impairments did not meet or medically equal Listing 1.15, or, for that matter, Listings 1.16 and 1.18.  Before discussing the evidence, however, the Court first addresses the sufficiency of the ALJ's explanation of his findings regarding the Listings.

### A.     Sufficiency Of The ALJ's Explanation

The ALJ expressly addressed whether Flores's "medical signs, symptoms, laboratory findings, or degree of functional limitation" either met or equaled the criteria of any listed impairment.  (R. 606.)  To be sure, the ALJ's analysis at step three was hardly illuminating.  The ALJ recited the lengthy set of requirements for each of the three Listings considered and stated in conclusory fashion that, although Flores had been diagnosed with degenerative disc disease, there is no record evidence that Flores fulfills all the identified criteria for any one Listing.  (R. 606-08.)  Such summary assessment is unhelpful.  Afterall, the ALJ's decision is supposed to set forth the ALJ's reasoning to allow for meaningful review.  The Second Circuit thus has cautioned that where a

reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," the court should not "hesitate to remand for further findings or a clearer explanation for the decision."  *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

On the other hand, it is well-established that the ALJ need not "explicitly discuss every Listing in his written opinion, and there is no error in failing to discuss a particular Listing when substantial evidence indicates a claimant did not satisfy the Listing."  *Jones v. Berryhill*, 415 F. Supp. 3d 401, 419 (S.D.N.Y. 2019); *see also Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 482 (S.D.N.Y. 2018) (rejecting plaintiff's contention that remand is required, notwithstanding the fact that the ALJ conducted "no analysis whatsoever of the elements of [Listing 1.04]").  Similarly, where, as here, the ALJ only cursorily mentions a particular Listing without providing an "express rationale," there is no error if the ALJ's determination is otherwise supported by substantial evidence in the record.  *Salmini v. Commissioner of Social Security*, 371 F. App'x 109, 112-13 (2d Cir. 2010); *accord Berry*, 675 F.2d at 469 (affirming an ALJ's determination that the claimant did not meet Listing 1.04 [the predecessor of 1.15], and explaining that "in spite of the ALJ's failure to explain his rejection of the claimed listed impairments, [the court was] able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence").

### B.   Substantial Evidence

Substantial evidence supports the ALJ's conclusion that Flores's back impairment did not meet or equal Listing 1.15.

Each Listing sets out "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3).  To satisfy their burden, claimants must "meet all of the specified medical criteria [in the listing].  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990) (emphasis omitted); *see also* 20 C.F.R. §§ 404.1525(c)(3).  A claimant may, however, satisfy a Listing if the claimant can show that his impairment is "medically equivalent" to a Listing, meaning that it is "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a).  To make that determination, the Commissioner "will look to see whether [the claimant's] symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria."  20 C.F.R. 404.1529(d)(3).  The Commissioner will not, however, "substitute [a claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [the] impairment(s) to that of a listed impairment."  *Id.; see Knight v. Astrue*, 32 F.Supp.3d 210, 218 (N.D.N.Y. 2012) (a claimant "must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques").

Additionally, to meet or equal a Listing, "it is not enough that scattered portions of the record might support certain of the required elements of a listing.  Rather the 'claimant must show that he meets all the requirements of the listing consistently.'" *Aguirre v. Saul*, 568 F. Supp.3d 477, 484 (S.D.N.Y. 2021) (quoting *John Q. v. Commissioner of Social Security*, No. 19-CV-1249, 2021 WL 1578297, at *6 (W.D.N.Y. Apr. 22, 2021) (original emphasis omitted)).  "Put another way, 'when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another,' the claimant's

condition does 'not rise to the level of severity required by' the Listing." *Kujtim v. Kijakazi*, No. 3:21-CV-00205, 2022 WL 2965621, at *4 (D. Conn. Jul. 27, 2022) (quoting *Monsoori* v. *Commissioner of Social Security*, No. 1: 17-CV-01161, 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019)).  Indeed, the regulations impose a "duration requirement" that, unless an impairment is expected to result in death, "it must have lasted or be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 404.1509.  "In other words, plaintiff has the burden of showing that he met each of the elements of a listing for a continuous period of 12 months."  *Aguirre*, 468 F. Supp.3d at 484.

Listing 1.15 requires a disorder of the spine resulting in compromise of a nerve root further documented by each of four sets of criteria, A, B, C, and D.  20 C.F.R. Part 404, Subpart P, App. 1, § 1.15.  The only one of those criteria supported by the record is C, which requires findings on imaging consistent with compromise of a nerve root in the spine.  Although the record does not contain the image itself, progress notes from January 2017 refer to MRI results indicating compromise of the nerve root.  (R. 989.)

The record, however, does not support the other criteria of Listing 1.15 or their medical equivalents prior to January 13, 2017.  Both the A and B criteria require "radicular" symptoms (pain, paresthesia, or muscle fatigue) and signs present during physical examination or on a diagnostic test and further evidenced by muscle weakness and other indicia.  Flores's medical record does not establish both the radicular symptoms and signs required by criteria A and B.  Although Flores complained of low back pain for years, he affirmatively reported in his 2015 emergency room visit that the back pain did not radiate and denied weakness, numbness, or tingling.  (R. 521-22.)  Similarly, at his examination

by Dr. Graham in July 2015, Flores denied any associated radiculopathy, weakness, paresthesia, or numbness of his lower extremities.  (R. 586.)

It was not until December 1, 2016 that NP Jo noted Flores's complaint of "on and off" back pain accompanied by radiating pain to the legs.  (R. 981.)  And it was not until January 11, 2017 that Dr. Hussein noted limited range of extension (but not motion) in the lumbar spine.  (R. 993.)  But even then, Flores presented with intact sensation in both lower extremities, full leg muscle strength, and no loss of sensation.  (*Id*.)  In any event, the record is devoid of evidence that prior to January 13, 2017, Flores met or medically equaled "each of the elements of a listing for a continuous period of 12 months" or could be expected to do.  *Aguirre*, 468 F. Supp. 3d at 484.

Nor does the record support the requirements of criteria D – at any time – let alone prior to January 13, 2017.  Criteria D requires documented medical need for, in sum and substance, (i) a walker, bilateral canes or crutches, or a wheelchair, or (ii) an inability to use one upper extremity, and a documented need for a one-handed, hand-held assistive device that requires use of the other arm or a wheelchair involving use of one hand, or (iii) an inability to use both arms.  20 C.F.R. Part 404, Subpart P, App. 1, § 1.15.  At his 2017 hearing, Flores testified that he used a cane for balance when he walks.  (R. 216-17.)  The need for one cane, however, falls well short of any of criteria D's demands, all of which essentially require impediments to using both legs or both arms.  Yet the record is devoid of any documented need for Flores to use two canes, a walker, or a wheelchair, and he does not suggest otherwise.

Dr. Kendrick's testimony at the 2021 hearing also supports the ALJ's conclusion. Contrary to Flores's assertion that Dr. Kendrick testified that he did not "consider" the

Listings (Pl. Mem. at 12), the hearing transcript shows just the opposite:  The ALJ asked "do you believe the claimant meets a listing," to which Dr. Kendrick answered "no."[6]  (R. 650.)  Flores's criticisms of Dr. Kendrick's testimony do not undermine the ALJ's reliance on it.  Flores recites Dr. Kendrick's testimony that he missed the MRI reference in the treatment notes but overlooks that Dr. Kendrick rendered his opinion after taking the reference into account.  (*Compare* Pl. Mem. at 12 with R. 648-49.)  Dr. Kendrick in part based his opinion on the lack of treatment sought by Flores for his back (R. 649), which, as the ALJ noted, did not begin until shortly before Flores's birthday in January 2017 (R. 611.)  Flores contests Dr. Kendrick's reasoning as "non-sensical" but mischaracterizes the doctor's testimony in doing so.  (*See* Pl. Mem. at 12 (attributing to Dr. Kendrick the proposition that "an impairment cannot be considered an impairment and any symptoms of that impairment cannot exist unless there is treatment" even though Dr. Kendrick did not assert either proposition).)

Regardless of whatever flaws there may be in the ALJ's sparse analysis or in the reasoning employed by Dr. Kendrick, as discussed above, substantial evidence supports the ALJ's finding that, for the period prior to January 13, 2017, Flores's degenerative disc disease did not meet or equal Listing 1.15.  For similar reasons, substantial evidence supports the ALJ's findings that Flores's impairments do not meet or equal Listings 1.16

---

[6] The ALJ did not separately ask Dr. Kendrick whether he believed Flores medically equaled any of the Listings as distinct from squarely meeting them.  While the ALJ should have done so, the omission does not change the result, discussed in the text, that substantial evidence in the record supports the ALJ's determination and that the record clearly lacks evidence to satisfy several of the requisite Listing criteria.

or 1.18 for that time period.[7]   Notably, Flores does not point to evidence in the record that would support a finding that his back impairment medically equaled all of the criteria of any Listing, let alone that could be expected as of any time prior to January 13, 2017, to consistently last for more than a year.[8]   Nor does Flores attempt to explain how the record would support such a conclusion.   "Accordingly, because this is not a case 'in which [the Court] would be unable to fathom the ALJ's rationale in relation to the evidence in the record,' there is no need … to remand this case to the ALJ for clarification."[9]   *Salmini*, 371

---

[7] For example, with respect to Listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), Flores points to no evidence indicating compromise of the cauda equina or of the need for an assistive device under the circumstances outlined in criteria D, which are identical to those of criteria D of Listing 1.15.  Similarly, with respect to Listing 1.18 (abnormality of a major joint in an any extremity), which would be relevant to Flores's osteoarthritis of the knee, Flores does not and cannot identify an anatomical abnormality on physical examination or in imaging as required by criteria C or use of an assistive device meeting the requirements of criteria D, which are identical to those of Listings 1.15 and 1.16.

[8] The only record evidence referenced by Flores to support the existence of any requirements of the Listings are the treatment notes referring to the MRI revealing disc bulges and herniation compromising the nerve root, and Flores's having complained of low back pain for years.  (Pl. Mem. at 11.)  But documented compromise of a nerve root is only one (C) of the four sets of criteria required for Listing 1.15.  Back pain by itself does satisfy criteria A, B, and D.

[9] Nor is the instant case like those in which courts, including this one, have remanded an ALJ's conclusory finding that a claimant did not meet or equal a Listing because the record contained substantial evidence that the claimant may well meet the requisite criteria of a Listing.  *See, e.g.*, *Prieto v. Commissioner of Social Security*, No. 20-CV-3941,  2021 WL 3475625,  at *15 (S.D.N.Y. 2021) (remanding in part because "there [wa]s considerable evidence in the record that [claimant] met many of the requirements of Listing 1.04(A)"); *Monsoori*, 2019 WL 2361486 at *4 (remanding where "the Court's review of the record reveals there is evidence suggesting Plaintiff may in fact meet the Listing and accordingly, a more thorough analysis and explanation was required"); *Cherico v. Colvin,* No. 12-CV-5724, 2014 WL 3939036, at *28 (S.D.N.Y. Aug. 7, 2014) (holding that an ALJ merely stating that he or she had considered the requirements of a listing was "patently inadequate to substitute for specific findings in view of the fact that plaintiff has at least a colorable case for application of listing 1.04(A)" and that where there is "record support for each of the[ ] [necessary] symptoms ... the ALJ was required to address that evidence, and his failure to specifically do so was error that would justify a remand).  Unlike those

F. App'x at 113 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d. Cir. 1983)); *see, e.g.*, *Otts v. Commissioner of Social Security*, 249 F. App'x 887, 889 (2d Cir. 2007) ("While the ALJ might have been more specific in detailing the reasons for concluding that [the claimant's] condition did not satisfy a listed impairment, the referenced medical evidence, together with the lack of compelling contradictory evidence from the plaintiff, permits us to affirm this part of the challenged judgment").

## II.    The ALJ Did Not Err At Step Five

The ALJ found that prior to January 13, 2017, significant numbers of jobs existed in the national economy that Flores could have performed.  For that determination, the ALJ relied on the testimony of the VE, who explained that someone like Flores – capable of light, unskilled work limited to only occasional use of the right dominant hand – would be limited to visual inspection jobs, but that there were available jobs of that nature.  (R. 657-58.)  Having found, and asked the VE to assume, an RFC that Flores does not challenge, the ALJ appropriately relied on the VE's testimony.  *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2019) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion … and accurately reflect the limitations and capabilities of the claimant involved") (internal brackets, quotation marks and citations omitted).

Flores nevertheless argues that the ALJ erred by failing to properly ask and resolve a conflict between the VE's testimony and the job requirements of the Dictionary of

cases, the record here does not contain evidence supporting evidence of multiple mandatory criteria of the relevant Listings.

Occupational Titles ("DOT").  (Pl. Mem. at 12-15.)  In particular, Flores asserts that the ALJ's hypotheticals to the VE required her to assume that Flores could use his right dominant hand only up to 50% of a work day, even though 50% is less than the top end (two-thirds) of the range required for "frequent" handling and fingering.  Flores then faults the ALJ for not inquiring about that conflict, instead having only generally obtained the VE's agreement to inform the ALJ if any conflicts arose during the VE's testimony.  (*See* R. 652.)

Flores is correct that an ALJ has the responsibility to meaningfully inquire about – and resolve – any possible conflict between the VE's testimony and the DOT.  *See, e.g., Lockwood v. Commissioner of Social Security Administration*, 914 F.3d 87, 92 (2d Cir. 2019) (the Commissioner is required "to 'obtain a reasonable explanation' for any 'apparent' – even if non-obvious – conflict between the *Dictionary* and a vocational expert's testimony" (original emphasis omitted)) (citing Social Security Ruling 00-4p, 2000 WL 1898704, at *2).  Flores is not correct, however, that the ALJ erred in this case.  The purported conflict identified by Flores concerns hypotheticals – handling and fingering at a frequent level – that did not employ the RFC on which the ALJ ultimately relied.  Rather, the ALJ relied on the VE's response to a hypothetical premised on an RFC limited to only occasional handling and fingering.  (*See* R. 608 (RFC determination); R. 657-58 (VE testimony about jobs available at a light level with only occasional handling and fingering).)  That is made perfectly clear by the ALJ having identified as available jobs the very same jobs that the VE testified were sufficiently available to an individual, like Flores, who is limited to light, unskilled work with only occasional handling and fingering.  (*See* R. 657-58 (VE testimony identifying three examples of available jobs); R. 620-21 (ALJ's

identification of those same jobs).)  The error alleged by Flores is a proverbial strawman – it does not relate to what the ALJ actually determined.

Flores additionally argues that two of the three jobs identified by the VE and relied upon by the ALJ do not properly fall within the requirements of the hypotheticals posed by the ALJ. (Pl. Mem. at 14-15.)  First, Flores asserts that "[t]he job of filling machine tender" requires finger dexterity at level four and manual dexterity at level three, which are contrary to the limitations assessed by the ALJ.   But Flores does not provide any support or record evidence for that conclusory assertion and does not explain why those dexterity levels are inconsistent with the ALJ's RFC determination limiting Flores to occasional handling and fingering.  To the contrary, as the ALJ noted, "examining sources generally found [Flores's] grip strength to have been 5/5 with his dexterity intact, indicating an ability to engage in fine motor activity."  (R. 611; *see* R. 588 (results of examination by Dr. Graham).)

Second, Flores contends that the VE provided the wrong DOT Code for a laminating machine tender, instead providing the code for "taker-off hemp fiber," and that, in any event, both jobs are classified at the medium level, not the light level.  Flores is incorrect.  The DOT Code identified by the VE – 569.686-046 – is "laminating-machine offbearer" and requires only "light" exertion.  *See* 1991 WL 683893 at *1.  And although the ALJ described the job as laminating-machine "tender" rather than "offbearer," Flores has ascribed no significance to that difference, and the Court discerns none.  Instead, Flores incorrectly refers to the DOT Code as "taker-off hemp fiber," which bears no relation to the VE's testimony or ALJ's decision.  In sum, the ALJ did not err at step five of the sequential analysis.

### III.    Flores's Omitted Exhibit Argument Is Inconsequential

Lastly, Flores argues that the ALJ erred by failing to include on the proceeding's exhibit list a copy of a letter Flores sent after the hearing requesting to again amend his alleged onset date.  That argument is not availing, however, because even if that omission could be considered error, it was harmless.

Flores initially alleged an onset date of July 1, 2010 (R. 374, 378), which he amended to October 1, 2013 at his first administrative hearing in 2014 (R. 223).  The ALJ referenced that date in his decision.  (R. 608.)  Flores now points to an exhibit submitted with his moving brief in the instant case, showing that his lawyer submitted a letter to the ALJ on March 29, 2021 stating that Flores "agrees" to an onset date of January 13, 2012.  (Pl. Mem. at 21-22 and Ex. A.)  The record exhibit list, however, does not include the March 29, 2021 letter.   Flores contends that omission was in error because the Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") states that a claimant "is entitled to know the information the ALJ relied on when making the decision" and requires preparation of an exhibit list "in final form" when an ALJ's decision is less than fully favorable to the claimant.  (Pl. Mem. at 15.)

Other than quoting the HALLEX and noting the March 29, 2021 letter's omission from the exhibit list, Flores presents no argument, legal authority, or explanation of why its omission has any legal or practical consequence in this case.  Indeed, although the HALLEX "often provides a helpful guideline," "some courts have held that 'a failure to follow HALLEX does not necessarily constitute legal error'" … "[b]ecause the instructions in  HALLEX  are  not  regulations  promulgated  by  the  Commissioner."   *Rosa v. Commissioner of Social Security*, No. 17-CV-3344, 2018 WL 5621778, at *13 (S.D.N.Y.

Aug. 13, 2018) (first quoting *Gallo v. Colvin*, No. 15-CV-9302, 2016 WL 7744444, at \*12 (S.D.N.Y. Dec. 23, 2016) (internal quotation marks omitted), *R&R adopted*, 2017 WL 1215219 (S.D.N.Y. Mar. 31, 2017)),  then quoting  *Paredes v. Commissioner of Social Security*, No. 16-CV-00810, 2017 WL 2210865, at \*16 (S.D.N.Y. May 19, 2017) (citing *Harper v. Commissioner of Social Security*, No. 08-CV-3803, 2010 WL 5477758, at \*4 (E.D.N.Y. Dec. 30, 2010))).

Regardless of whether failure to follow the HALLEX can constitute legal error, there was no error of consequence here.  To the extent Flores means to suggest that the ALJ should have considered the earlier onset date of January 13, 2012, Flores does not explain how that could or would have made any difference to the outcome.  Flores points to nothing in the record supporting his being disabled as of his alleged second-amended onset date.  Indeed, Flores's recitation of the medical evidence in his brief begins in April 2015, over three years after the proffered onset date.  (*See* Pl. Mem. at 4.)  Remanding for consideration anew to account for the earlier onset date would be futile.  As the Second Circuit has observed, "[w]here application of the correct legal standard could lead to only one conclusion, we need not remand."  *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998); *see also McCoy v. Commissioner of Social Security*, No. 2:17-CV-191, 2018 WL 3456495, at \*5 (S.D. Ohio July 16, 2016) (finding no error where failure to provide exhibit list in final form was harmless); *Newman v. Commissioner of Social Security*, No. 11-CV-2724, 2014 WL 1217955, at \*15 (D.N.J. Mar. 21, 2014) (same), *recon. denied*, 2014 WL 1334222 (D.N.J. Apr. 2, 2014).  That is precisely the situation here.

**CONCLUSION**

The Court finds no error in the ALJ's determination, which is supported by substantial evidence.  To the extent not set forth above, the Court has considered Flores's arguments and finds them to be without merit.  Accordingly, pursuant to sentence four of 42 U.S.C. § 405(g), Flores's motion is DENIED and the Commissioner's motion is GRANTED.  The Clerk of Court is directed to enter Judgment in favor the Commissioner and to close the case.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: December 8, 2022
        New York, New York

Copies transmitted on this date to all counsel of record.

27